UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS DAVID MARTINEZ-GUTIERREZ,

Petitioner,

v.

KRISTI NOEM, et al.,

Respondents.

No. 1:26-cv-00421-DJC-CSK

ORDER

Petitioner is a noncitizen who was paroled into the United States in August 2021.  Petitioner also received Temporary Protected Status ("TPS") in 2024.  Over four years after his entry, Petitioner attended a required Immigration and Customs Enforcement ("ICE") check-in where he was detained.  Petitioner filed a Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order alleging that his detention is unlawful and seeking immediate release.  For the reasons below, the Court GRANTS Petitioner's Motion for Temporary Restraining Order.

**BACKGROUND**

Petitioner is a citizen and national of Venezuela and entered the United States in July 2021.  (Habeas Petition ("Pet.") (ECF No. 1) ¶ 6.)  Upon entry, Petitioner was detained and held in custody where he was determined to have a credible fear of

1

persecution after undergoing a credible fear interview.  (*Id.* ¶ 7.)  After his CFI, Petitioner was paroled into the United States under Immigration and Nationality Act ("INA") § 212(d)(5) in August 2021 to pursue an asylum claim.  (*Id.*; Mot TRO (ECF No. 2) at 2.)  He was released on his own recognizance and placed in removal proceedings under INA § 240.  (Pet. ¶ 7.)  Petitioner filed his asylum application, and his individual merits hearing was scheduled for March 2028.  (*Id.*)

Petitioner also had his TPS application approved in April 2024 making him a beneficiary of the 2023 TPS designation for Venezuela.[1]  (Robinson Decl. (ECF No. 2-2) ¶ 9.)  Recently, the Ninth Circuit   For over four years, Petitioner was able to establish a life for himself in the United States.  (*Id.* ¶ 8.)  He complied with his reporting requirements and has no criminal history anywhere in the world.  (*Id.* ¶ 13.)  However, on October 14, 2025, Petitioner attended a routine ICE check-in where he was detained without notice.  (*Id.* ¶ 14.)  In the weeks that followed, Petitioner had a bond hearing in Texas where his request was denied for lack of jurisdiction under *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025).  (*Id.* ¶ 16.)  Petitioner was then subjected to a multi-day transfer process – during which time he lost 10 pounds and was unable to be located by his family – before ultimately being processed at the California City Detention Facility.  (*Id.* ¶ 17–18.)  In December 2025, Petitioner had another request for bond denied, again premised on *Matter of Yajure Hurtado*.  (*Id.* ¶ 19.)

Petitioner filed a Habeas Petition and Motion for Temporary Restraining Order contending that his arrest and detention are unlawful.  Petitioner seeks immediate

---

[1] On January 17, 2025, Secretary Mayorkas extended the 2023 TPS designation through October 2, 2026.  (Robertson Decl. ¶ 9.)  Petitioner re-registered in July 2025 pursuant to this extension and enrolled in the National TPS Alliance.  (*Id.*)  On February 3, 2025, Respondent Noem vacated Secretary Mayorkas's extension and terminated the 2023 TPS designation for Venezuela entirely.  (*Id.*)  The Ninth Circuit recently affirmed a district court's finding that Respondent Secretary Noem exceeded her statutory authority by revoking TPS protections for Venezuelans and Haitains.  *See Nat'l TPS All. v. Noem,* --- F.4th ---, 2026 WL 226573 at *1 (9th Cir. 2026) ("The Secretary's actions fundamentally contradict Congress's statutory design, and her assertion of a raw, unchecked power to vacate a country's TPS is irreconcilable with the plain language of the statute.").  The Court recognizes that the Petitioner and Respondents primarily focus their discussion on Petitioner's TPS status.  Although the Court does not discuss those claims in this Order, the Court finds that recent Ninth Circuit authority supports Petitioner's position.

release and a prohibition from re-detention pending further order of the Court, or alternatively, seeks immediate release and a pre-deprivation hearing prior to re-arrest. The matter is fully briefed (Opp'n (ECF No. 5); Reply (ECF No. 7)) and ordered submitted without oral argument subject to Local Rule 230(g).

**LEGAL STANDARD**

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008) (citations omitted). "[I]f a plaintiff can only show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (citations omitted).

**DISCUSSION**

**I.    Likelihood of Success on the Merits**

**A.  Due Process**

Petitioner raises eight claims for relief in his Habeas Petition. In the interest of judicial economy, the Court will address Petitioner's claim alleging that his detention violated his procedural due process rights under the Fifth Amendment. Petitioner argues that due process entitled him to a pre-deprivation hearing prior to his arrest and detention. Respondents argue that Petitioner is an "applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V.

Individuals subject to mandatory detention are not without due process rights. *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent"; *see also Doe v. Becerra,* 787 F. Supp. 3d 1083, 1091–93 (E.D. Cal. 2025) (finding a liberty interest for a petitioner under section 1225(b)(1)).  The Due Process Clause generally "requires some kind of a hearing <u>before</u> the State deprives a person of liberty or property."  *Zinermon v. Burch,* 494 U.S. 113, 127 (1990) (emphasis in original).

Courts examine procedural due process claims in two steps.  *Berrios v. Albarran,* No. 1:25-cv-01544-TLN-CSK, 2025 WL 3171140, at *2 (E.D. Cal. Nov. 13, 2025) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)).  The first step asks whether a protected liberty interest under the Due Process Clause exists.  *Id.* (citation omitted).  The second step "examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution."  *Id.* (citation omitted).

### 1.  Petitioner has a Protected Liberty Interest.

Here, Petitioner was granted parole in August 2021 pursuant to 8 U.S.C. § 1182(d)(5).  (ECF No. 2-2, Ex. A).  Under section 1182(d)(5)(A), noncitizens may be temporarily released on parole for "urgent humanitarian reasons or significant public benefit."  Release under this section requires a determination that the noncitizen poses neither "a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).  "Once released, a parolee acquires an interest in his or her continued liberty."  *Chavarria v. Chestnut,* No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025); *Pinchi v. Noem,* 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (". . . the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the. . . conditions [of release]." (citing *Morrissey v. Brewer,* 408 U.S. 471, 482 (1972)).

Many district courts in the Ninth Circuit, including this Court, have found that noncitizens paroled into the United States under section 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections. *See M.B. v. Noem,* No. 1:25-cv-00005-DJC-AC, 2026 WL 74155, at *3 (E.D. Cal. Jan. 9, 2026) (explaining that the government "endowed" petitioner with a protected liberty interest by releasing him on parole pursuant to section 1182(d)(5)(A)); *Chavarria,* 2025 WL 3533606, at *3 (collecting cases).

Here, Petitioner's Interim Notice Authorizing Parole reads in part: "Your parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon your departure or removal from the United States or at the end of the one-year period unless ICE provides you with an extension at its discretion."  (ECF No. 2-2, Ex. A.)  This document, which was issued on August 18, 2021, appears to have been automatically terminated.[2]  (*Id.*)  This is relevant because section 1182(d)(5)(A) provides that upon termination of parole, a noncitizen "shall forthwith return or be returned to the custody from which he was paroled," which Respondents represent to be section 1225(b)(2) custody.  However, the Court finds that the expiration does not mean Petitioner lacks a protected liberty interest.

Rather, the Government may still create a liberty interest through the "implicit promise" of continued liberty beyond the expiration of parole.  *See D.L.C. v. Wofford*, No. 1:25-cv-01996-DC-JDP, 2026 WL 145646, at *4 (E.D. Cal. Jan. 20, 2026) (finding a liberty interest for a petitioner who, among other actions, had been granted employment authorization and continued to attend ICE check-ins after the nominal termination of his parole); *Rodriguez Cabrera v. Mattos*, No. 2:25-cv-01551-RFB-EJY, --- F. Supp. 3d ---, 2025 WL 3072687, at *11 (D. Nev. Nov. 3, 2025) ("Petitioner has a fundamental interest in freedom from physical confinement,

---

[2] On this record, it is unclear to the Court whether Petitioner's parole was properly terminated.  *See M.B. v. Noem,* 2026 WL 74155, at *2 (E.D. Cal. Jan. 9, 2026); *Y-Z-L-H v. Bostock,* 792 F. Supp. 3d 1123, 114-46 (D. Or. 2025).

and that liberty interest is particularly strong given his initial release from detention [pursuant to [section] 1182] in 2022, and the fact that Respondents did not seek his return to custody upon the expiration of his parole in December 2022, or in the three years since.").

Here, such liberty interest exists.  For over three years, Petitioner represents that he abided by his reporting requirements without incident.  (Pet. ¶ 67.)  Petitioner appears to have been granted work authorization beyond the one-year period of his parole (*see id.* ¶ 8; Robinson Decl. ¶ 21,) and also received TPS status in 2024 (Pet. ¶ 24).  Petitioner represents that he was never issued a revocation of his parole.  (*Id.* ¶ 15.)  In the time between August 2022 and October 2025, Petitioner established a life for himself based on the implied promise that he would remain released in spite of the dated expiration.  (*See* Robinson Decl. ¶¶ 21, 24).  Because Petitioner's "liberty interest [does] not expire along with his parole," *Omer G.G. v. Kaiser,* 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025), the Court proceeds to determine what process he is due.

### 2.  Petitioner is Entitled to a Pre-Deprivation Bond Hearing.

Under *Mathews v. Eldridge,* 424 U.S. 319 (1976), the Court considers: 1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the Government's interest to determine what process is necessary to ensure that any deprivation of Petitioner's liberty interest accords with the Constitution.

Petitioner has a substantial private interest in maintaining his out-of-custody status.  Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690.  Petitioner remained out of custody for over four years without incident.  The risk of erroneous deprivation is also considerable.  Civil immigration detention is "nonpunitive in purpose and effect" and, therefore, only justified when a noncitizen is a flight risk or danger to the community.  *Zadvydas*, 533 U.S. at 690.  Petitioner asserts, and Respondents do not contest, that Petitioner does not present either risk.  Further, it is undisputed that Petitioner appeared for a

scheduled check-in appointment with ICE when arrested.  Respondents have not argued nor presented any evidence that there has been a change in circumstance between his 2021 entry into the United States and his detention on October 14, 2025.  Thus, the value of additional procedural safeguards here is substantial.  Finally, Respondents' interest in detention is low.  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); see *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017).  The effort and cost required to provide Petitioner with procedural safeguards are minimal.

Having found that Petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process, and that process should have bene afforded to him prior to detention, the Court finds that Petitioner has established a likelihood of success on the merits of his procedural due process claim.

**II.     Remaining Factors**

Petitioner will suffer irreparable harm in the absence of preliminary relief.  The Ninth Circuit has recognized the irreparable harm inflicted by the "subpar medical and psychiatric care in ICE detention facilities."  *Hernandez*, 872 F.3d at 995.  More broadly, the Ninth Circuit has also acknowledged the "irreparable harms imposed on anyone subject to immigration detention" including "the economic burdens imposed on detainees and their families as a result of detention."  *Id*.  Petitioner has established irreparable harm.

The final two *Winter* factors merge when the government is the nonmoving party.  *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023).  The interests of equity and the public weigh in favor of Petitioner here.  As discussed above, Petitioner is harmed by his ongoing detention.  A temporary restraining order also inflicts minimal harm to the government.  Though Respondents have an interest in enforcing immigration laws, "the public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-cv-05071-BLF, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).  "[N]either equity nor the public's interest

are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). There also appears to be no dispute as to Petitioner's risk of flight or danger to the community. For these reasons, the Court concludes that the equities and public interest weigh in favor of Petitioner.

### III. Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any, and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday,* 320 F.3d 906, 919 (9th Cir. 2003) (emphasis in original). Because "the [government] cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," *Zepeda v. U.S. I.N.S.,* 753 F.2d 719, 727 (9th Cir. 1983), the Court finds that no security is required here.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2) is converted to a Motion for Preliminary Injunction and GRANTED.

2. Petitioner Luis David Martinez-Gutierrez shall be released immediately from Respondents' custody. Respondents shall not impose any additional restrictions on him, unless they are determined to be necessary at a future pre-deprivation/custody hearing.

3. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest and

8

detention – and a timely hearing.  At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.

4.  This matter is referred to the assigned Magistrate Judge for all further pretrial proceedings, see L.R. 302(c)(17), with the exception of any motion to modify the terms of this Order.

IT IS SO ORDERED.

Dated:   **February 2, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – MartinezGutierrez26cv00421.tro_v2

9